

FILED
at____O'clock &____min____M

MAR 3 1 2006

United States Bankruptcy Court
Columbia, South Carolina (33)

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:

**ENTERED**

MAR 3 1 2006

Debtor.

KPD

Annie M. Turner,

C/A No. 05-45355-J

Chapter 13

**ORDER**

This matter comes before the Court upon Citifinancial Auto Corporation's ("Citifinancial") objection to a Chapter 13 plan proposed by Annie M. Turner ("Debtor"). Under the terms of Debtor's proposed Chapter 13 plan, Debtor intends to treat Citifinancial's claim as an unsecured claim. Conversely, Citifinancial contends that its claim should be treated as a secured claim and paid in full under Debtor's plan. In light of the evidence and legal arguments presented by the parties, the Court makes the following Findings of Fact and Conclusions of Law.[1]

### FINDINGS OF FACT

1.      On October 13, 2003, Debtor purchased a 1999 Lincoln Towncar ("Towncar"). Debtor acquired the Towncar for her personal use.

2.      Under the terms of the contract of sale, Citifinancial holds a perfected first lien on the Towncar.

3.      On December 16, 2005, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.[2] At the time of Debtor's filing, the principal balance that Debtor owed to Citifinancial was approximately $15,735.86.[3]

---

[1]      To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

[2]      As of the date of Debtor's bankruptcy filing, the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) had been amended by the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Furthermore, all internal references to provisions of the Bankruptcy Code as amended by the BAPCPA shall be by section number only.

4.    Under the terms of the first Chapter 13 plan that Debtor filed with the Court, Debtor proposed to pay only the $8,000.00 replacement value of the Towncar.

5.    Citifinancial objected to Debtor's treatment of its claim under the terms of her first proposed plan, and contended that Debtor was required to pay its claim in full pursuant to an unnumbered paragraph found after § 1325(a)(9), which may also be referred to as the flush language of § 1325(a),[4] because Citifinancial held a purchase money security interest in the Towncar that Debtor purchased within the 910 days preceding her bankruptcy filing.[5]

6.    In response to Citifinancial's objection, Debtor amended her plan, and proposed to treat Citifinancial's claim as a general unsecured claim that will be paid 26% of the allowed claim, on a pro-rata basis.

7.    In light of the treatment of Citifinancial claim under Debtor's second proposed Chapter 13 plan, Citifinancial filed another objection.

## CONCLUSIONS OF LAW

In this case, the Court must determine the effect and meaning of the flush language of § 1325(a).  The flush language provides as follows:

> For purposes of paragraph (5), section 506 shall not apply
> to a claim described in that paragraph if the creditor has a
> purchase money security interest securing the debt that is
> the subject of the claim, the debt was incurred within the

---

[3]    On January 6, 2006, Citifinancial filed a proof of claim in which it asserted a secured claim in the amount of $15,735.86.

[4]    The Fourth Circuit stated that "[t]he phrase 'flush language' refers to language that is written margin to margin, starting and ending 'flush' against the margins. Flush language applies to the entire statutory section or subsection...." Snowa v. C.I.R., 123 F.3d 190, 196 n. 10 (4th Cir. 1997) (citing Reser v. Commissioner, 112 F.3d 1258, 1262 n. 10 (5th Cir.1997)).  In the context 11 U.S.C. § 1325(a), it appears that the flush language applies to § 1325(a)(5).

[5]    The Court notes that the priority and perfection of Citifinancial's security interests in the Towncar does not appear to be in dispute.  Furthermore, based upon the record of this case, it appears that Debtor concedes that Citifinancial's security interest in the Towncar is a purchase money security interest under applicable non-bankruptcy law or state law for the purpose of utilizing the flush language of § 1325(a)(5).

> 910-day [sic] preceding the date of the filing of the petition,
> and the collateral for that debt consists of a motor vehicle
> (as defined in second 30102 of title 49) acquired for the
> personal use of the debtor, or if collateral for that debt
> consists of any other thing of value, if the debt was incurred
> during the 1-year period preceding that filing....

11 U.S.C. § 1325(a)(flush language). The "paragraph (5)" mentioned in the flush language appears to be a reference to § 1325(a)(5).

Both Debtor and Citifinancial agree that the flush language of § 1325(a) is applicable to Citifinancial's claim because the Towncar, which was purchased within the 910 days preceding her bankruptcy filing, is for Debtor's personal use, and is subject to a purchase money security interest held by Citifinancial. However, Debtor and Citifinancial disagree on the affect of such langugage on the treatment of Citifinancial's claim under Debtor's current proposed plan and the applicable confirmation provisions of § 1325(a).

### I.   Position of the Parties

Debtor contends that Citifinancial's claim must be treated as a general unsecured claim under her proposed Chapter 13 plan, because the flush language of § 1325(a) provides that § 506 does not apply to Citifinancial's claim. According to Debtor's interpretation, the only way that Citifinancial can assert a secured claim against Debtor in her Chapter 13 case is to first establish an "allowed secured claim" against Debtor pursuant to § 506. Debtor also contends that Citifinancial cannot establish an "allowed secured claim" against Debtor for purposes of obtaining treatment under § 1325(a)(5) because the flush language of § 1325(a) prevents the application of section 506 to Citifinancial's claim. Accordingly, Debtor concludes that Citifinancial is left with a general unsecured claim for purposes of being treated under her Chapter 13 plan. Debtor

3

recognizes that, outside of Debtor's plan for reorganization, Citifinancial's claim is secured, and Citifinancial's security interests in the Towncar cannot be discharged. In fact, Debtor asserts that Citifinancial's claim will encumber the Towncar at the conclusion of Debtor's Chapter 13 bankruptcy case, and must be paid or otherwise addressed by Debtor at that time.

On the other hand, Citifinancial contends that the flush language of § 1325(a) prevents the Debtor from using § 506 to bifurcate Citifinancial's claim into a secured portion (the current replacement value for the Towncar) and an unsecured portion (the amount by which Citifinancial's claim exceeds the replacement value for the Towncar). According to Citifinancial's interpretation, Debtor must pay the full amount of the claim plus interest pursuant to the provisions of § 1325(a)(5) if she wishes to retain the Towncar and have her Chapter 13 plan confirmed because Debtor cannot utilize § 506 to bifurcate Citifinancial's claim.

II.    *Survey of Other Courts*

Since the enactment of the new provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, five bankruptcy courts have addressed the meaning of the flush language of § 1325(a) in decisions available to the Court. Four courts have concluded that the flush language of § 1325(a) prevents purchase money security interests on automobiles purchased for a debtor's personal use within 910-days of the filing of a bankruptcy petition from being "stripped down"[6] or reduced to the present value of the collateral under the terms of a Chapter 13 plan; accordingly, these

---

[6]    The Bankruptcy Court for the Middle District of Alabama has stated that the common understanding of the term strip down "refers to the bifurcation of a claim into its secured and unsecured components under 11 U.S.C. § 506." In re Wright, --- B.R. ---, 2006 WL 547824 at *1 (Bankr. M.D. Ala. Feb. 28, 2006).

courts find that purchase money security interests subject to the flush language of section 1325(a) must be treated as fully secured under a Chapter 13 plan. See In re Ezell, No. 05-38219, --- B.R. ---, 2006 WL 598412, at *7 (Bankr. E.D. Tenn. March 13, 2006) ("[U]nder the Revised § 1325(a)(5), a secured creditor falling within the scope of the [flush language of § 1325(a)] is fully secured for the amount of its claim, which is, in actuality, the debt owed."); In re Wright, No. 05-34240-DHW, --- B.R. ---, 2006 WL 547824, at *2 (Bankr. M.D. Ala. Feb. 28, 2006) (concluding that purchase money security interests of the kind described in the flush language of § 1325(a) cannot be stripped down and must be treated as fully secured under a Chapter 13 plan); In re Horn, No. 05-34246-DHW, --- B.R. ---, 2006 WL 416314, at *2 (Bankr. M.D. Ala. Feb. 23, 2006) ("[the flush language of § 1325(a)], however, prevents the application of §506, that is, the bifurcation of a secured claim into secured and unsecured portions... [i]f § 506 does not apply, the creditor's claim must be treated under the plan as fully secured."); In re Robinson, No. 05-71899, --- B.R. ---, 2006 WL 349801 at *3 (Bankr. M.D. Mo. Feb. 10, 2006) (concluding that creditors holding claims of the kind described in the flush language of §1325(a) are entitled to secured claims for the total amount of their claim, regardless of the value of the respective collateral); In re Johnson, 337 B.R. 269, 273 (Bankr. M.D.N.C. 2006) (concluding that the flush language of § 1325(a) prevents the strip down of the claims described therein and that "to conclude otherwise would be inconsistent with the terms of the statute and the legislative history of the statute"). See also Richardo I. Kilpatrick, *Selected Creditor Issues under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 AM. BANKR. L.J. 817, 834 (2005) (discussing protections of secured creditors and lessors in Chapter 13 cases and

concluding that the inapplicability of § 506 to claims described within the flush language of § 1325(a) requires such claims to be paid in full regardless of the actual value of the collateral).

One other court has adopted a different interpretation of the flush language of section 1325(a). The court, in In re Carver, rejected the majority view that claims covered by the flush language of § 1325(a) are fully secured claims for purposes of distribution under a Chapter 13 plan. No. 05-51909-JDW, --- B.R. ---, 2006 WL 563321, at *3-4 (Bankr. S.D. Ga. Mar. 6, 2006). Instead, much like Debtor, the Carver court concluded that "[b]y rendering [§ 506] inapplicable to [claims covered by the flush language of section 1325(a)], Congress expressly eliminated the mechanism by which they could be treated as secured claims under the Chapter 13 plan." Id. at *4. See also Jean Braucher, *Rash and Ride-Through Redux: The Terms for Holding on to Cars, Homes and Other Collateral under the 2005 Act*, 13 AM. BANKR. INST. L. REV. 457, 471 (2005) ("A large problem with the argument that the intention [of the flush language of § 1325(a)] was to dictate full debt repayment for certain recently acquired collateral is that section 1325(a) nowhere says that."); 8 COLLIER ON BANKRUPTCY at ¶ 1325.06[1][a], at pp. 1325-28 - 1325-29 (Lawrence P. King et al. eds., 15th ed. Revised 2005) (recognizing that the flush language of §1325(a) may be intended to that require certain secured claims are treated as fully secured regardless of the value of collateral, but concluding "even if that was the intent, because the new language added to section 1325(a) renders entirely inapplicable for some creditors the only section, section 506, that gives those creditors allowed secured claims, it does not carry out such intent.").

6

However, unlike Debtor, the Carver court does not conclude that secured claims subject to the flush language of § 1325(a) should be treated as unsecured claims which are simply paid pro-rata with other unsecured claims because the court acknowledged that Congress did not intend to punish or disfavor the holders of claims subject to the new provisions of the flush language. Accordingly, in light such legislative intent, the Carver court created a judicial remedy which requires that in a Chapter 13 plan, a claim subject to the flush language of § 1325(a) "must receive the *greater* of (1) the full amount of the claim without interest; or (2) the full amount the creditor would receive if the claim were bifurcated and crammed down (i.e., secured portion paid with interest and unsecured portion paid pro-rata)." In re Carver, 2006 WL 563321, at *6. Despite the utility of the judicial remedy fashioned in Carver, this Court declines to adopt it until a higher court has interpreted the the flush language of § 1325(a), and mandated such a rule.

III.    *The Court's Interpretation*

Given the overall structure of the Bankruptcy Code and legislative history which indicates that Congress did not intend to disfavor the class of secured creditors subject to the flush language of § 1325(a), this Court adopts the majority interpretation of the flush language described by the courts in Ezell, Wright, Horn, Robinson, and Johnson. See Hillman v. I.R.S., 263 F.2d 338, 342 (4th Cir. 2001) (recognizing that courts can look beyond an unambiguous statute and consult legislative history to divine its meaning if the literal application of the statutory language produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary or if the literal application of the statutory language "results in an outcome that can truly be

7

characterized as absurd, *i.e.*, that is so gross as to shock the general moral or common

sense....").

Such an interpretation appears strongly supported by the legislative history for

the flush language of § 1325(a) in light the following language from a 2005 House report

concerning provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act

of 2005 ("BAPCPA"), as proposed in Senate bill 256 ("S.256"):

> *Protections for Secured Creditors.* S.256's protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the 910-day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use. Where collateral consists of any other type of property having value, S.256 prohibits bifurcation of specified secured debts incurred during the one-year period preceding the filing of the bankruptcy case.

H.R. REP. No. 109-31, pt. 1, at 17 (2005), <u>as reprinted in</u> E-2 COLLIER ON BANKRUPTCY

at App. Pt. 10-268 (Lawrence P. King et al. eds., 15th ed. Revised 2005). Members of

Congress dissenting from enactment of the S.256 also recognized that

> [S.256] would largely eliminate the possibility of loan bifurcations in chapter 13 cases. Under current law a debtor is permitted to bifurcate a loan between the secured and unsecured portions. The debt is treated as a secured debt up to the allowed value of the property securing the debt. The remainder of the debt is treated as a non-priority unsecured debt. Section 306 of [S.256] prevents such bifurcation (including with regard to interest and penalty provisions) with respect to any loan for the purchase of a vehicle in the 910 days before bankruptcy, as well as all loans secured by other property incurred within one year before bankruptcy.

H.R. REP. No. 109-31, pt. 1, at 554 (2005), <u>as reprinted in</u> E-2 COLLIER ON BANKRUPTCY

at App. Pt. 10-903 (Lawrence P. King et al. eds., 15th ed. Revised 2005). Given such

legislative history, it appears that Congress did not intend Debtor's interpretation of the statute which has the effect of disfavoring or punishing secured creditors holding claims subject to the flush language of § 1325(a).

The Court also believes that Debtor's interpretation of the flush language and her proposed treatment of Citifinancial's claim fail to harmonize other parts of the Bankruptcy Code with the flush language's new provisions. In this case, Debtor contends that the flush language prevents Citifinancial's claim from being treated as an allowed secured claim under Debtor's plan; and thus, she proposes to treat Citifinancial's claim as a general unsecured claim. Debtor's interpretation of the flush language would allow a minimal payment to Citifinancial as an unsecured creditor. Faced with such a small payment, the usual rapid depreciation of the automobile collateral, and in light of the existing security interests that Debtor recognizes outside of her Chapter 13 plan, the Court would expect Citifinancial to assert a lack of adequate protection as a basis for relief from stay pursuant to § 362. Therefore, given the treatment of Citifinancial's claim under Debtor's proposed plan, a motion for relief from stay may require additional payments to Citifinancial or stay relief which results in Debtor's loss of use of the Towncar.

Furthermore, if debtors treat flush language claims as unsecured claims, such creditors may be unable to insist that debtors pay property taxes or maintain liability insurance both of which are essential to the protection of creditors' security interests and usually mandated by the agreement between the parties. Conversely, under the majority interpretation of the flush language of § 1325(a), it would be more difficult for creditors

to obtain relief from stay because the majority interpretation requires the full payment of secured claims described in the flush language.

In light of the foregoing analysis and the findings described herein, the Court finds that the flush language of § 1325(a) prevents a Chapter 13 debtor from "stripping down" purchase money security interests in automobiles acquired for a debtor's personal use within the 910-day period preceding that debtor's bankruptcy filing. Furthermore, the Court also concludes that secured creditors subject to the flush language of § 1325(a) are fully secured for the entire amount of their claims and must be repaid in full through a Chapter 13 plan if debtors wish to retain the collateral securing the claim.[7]

*IV.    Conclusion*

In light of the foregoing analysis, the Court shall sustain Citifinancial's objection to Debtor's proposed Chapter 13 plan, and Debtor shall be provided ten (10) days from the entry of this order to amend her plan to conform to this Court's interpretation of the flush language of § 1325(a) or the case shall be dismissed.

**AND IT IS SO ORDERED.**

John E. Waites

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina,
March 31, 2006

---

[7]    Although the Court has adopted the majority interpretation, it does not make a decision with respect to the modification of Citifinancial's rights pursuant to 11 U.S.C. § 1322.

10